UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 15-154** |
| v. | * | SECTION: "A" |
| **LEROY PRICE, ET AL.** | * | |

\* \* \*

**GOVERNMENT'S MEMORANDUM IN SUPPORT
OF ITS MOTION FOR RECONSIDERATION**

The United States of America, through the undersigned Assistant United States Attorneys, respectfully moves this Honorable Court for partial reconsideration its July 1, 2016 order on the government's motion *in limine* regarding the admissibility of music videos and lyrics. The July 1, 2016 order allows the government to play two songs performed by Ashton Price, but requires the redaction of portions of those songs that implicate co-defendants Evans Lewis and Curtis Neville in criminal activity. As explained below, there is no basis for requiring those redactions under *Bruton v. United States*, 391 U.S. 123 (1968),[1] or otherwise, and that portion of the July 1, 2016 order should be amended to remove the redaction requirement.

**Law and Argument**

A.  **This Court has the authority to reconsider and revise its July 1 order.**

Although the Federal Rules of Criminal Procedure do not provide for motions to reconsider, *see United States v. Palazzo*, 2012 WL 3546922, at *2 (E.D. La. Aug. 16, 2012), district courts have continuing jurisdiction over criminal cases and are free to reconsider their earlier decisions, *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975); *see also United States*

---

[1] As the Court is aware, *Bruton* is implicated where multiple defendants are joined for trial and Defendant A makes an out-of-court testimonial statement (*i.e.*, a confession, a recorded statement to law enforcement, an affidavit, or another statement produced for later use at trial) that also inculpates Defendant B. Although Defendant A's statement is admissible at trial against him (Defendant A), the government typically would be required to redact the portions of the statement that implicate Defendant B in order to avoid a violation of the Confrontation Clause. That is not the case when the statement is non-testimonial, as are the songs at issue here.

*v. Thompson*, 79 F. App'x 22, 23 (5th Cir. 2003) ("A motion for reconsideration in a criminal proceeding is a legitimate procedural device.").

**B.      *Bruton* does not apply to Price's lyrics inculpating Curtis Neville and Evans Lewis in drug-dealing and violent crime because those lyrics were non-testimonial statements.**

The Confrontation Clause bars the admission of "testimonial statements of a witness who did not appear at trial unless he was available to testify, and the defendant had [] a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). But *Crawford* itself makes clear that this exclusionary rule applies only to "testimonial" statements and that a statement is "testimonial" only if it was made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford*, 541 U.S. at 51-52) (explaining that statements to law enforcement or in court-like proceedings—*e.g.*, affidavits, custodial examinations, depositions, prior testimony, and confessions—fall within the Sixth Amendment's protection). *Crawford* itself, and as interpreted by the Fifth Circuit, is also very clear, however, that when the statement "is not procured with a primary purpose of creating an out-of-court substitute for trial testimony, it does not fall within the scope of the [Confrontation] Clause, and the admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *United States v. Polidore*, 690 F.3d 705, 711 (5th Cir. 2012) (internal quotations omitted).

Critically, because the rationale underlying *Bruton* is the same as the rationale underlying *Crawford*, *Bruton* also does not apply when the out-of-court statement is non-testimonial. *See United States v. Vasquez*, 766 F.3d 373, 378 (5th Cir. 2014) (suggesting that "*Bruton* applies only to statements by co-defendants that are testimonial under *Crawford*"). As recognized and cited with approval in *Vasquez*, the First, Second, Sixth, Eighth, Ninth, and Tenth Circuits have

explicitly held that *Bruton*'s reach is limited to testimonial statements.[2] The reason is clear: *Bruton*, as a byproduct of the Confrontation Clause, "presupposes that the aggrieved co-defendant has a Sixth Amendment right to confront the declarant in the first place[,]" and so absent that right, "none can complain that his right has been denied." *United States v. Figueroa–Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010). Where, as here, the statement at issue is a song that cannot possibly be said to have been rapped by Price with the purpose that it later be used in court, the statement is non-testimonial and *Bruton* does not apply to prevent the admission of portions of the statement that implicate defendants other than Price. *See*, *e.g.*, *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005) ("Statements made by a co-conspirator during the course and in furtherance of a conspiracy are by their nature generally non[-]testimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination."); *United States v. Delgado*, 401 F.3d 290, 299 (5th Cir. 2005) ("*Crawford* is not applicable to [hearsay statements made during the course and in furtherance of a conspiracy] because they are not testimonial hearsay statements.").[3]

The July 1, 2016 order appears to apply *Bruton* in holding that because rapper Ashton Price is not expected to testify at trial, the government must redact from his songs and videos any statements that reference co-defendants Neville and Lewis as drug dealers or purveyors of

---

[2] *United States v. Figueroa–Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010); *United States v. Pike*, 292 F. App'x 108, 112 (2d Cir. 2008); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009); *United States v. Dale*, 614 F.3d 942, 958-59 (8th Cir. 2010); *Smith v. Chavez*, 2014 WL 1229918, at *1 (9th Cir. Mar. 26, 2014); *United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013).

[3] This same rational also excludes from Confrontation Clause protection statements given to 911 operators, *Polidore*, 690 F.3d 705, government informants (when the co-conspirator making the statement is unaware that the person to whom they were speaking was a government agent or informant), *Brown v. Epps*, 686 F.3d 281 (5th Cir. 2012); *United States v. Vasquez*, 234 F. App'x 310 (5th Cir. 2007), jail cellmates, *United States v. Vasquez*, 766 F.3d 373, 378-79 (5th Cir. 2014), and friends or colleagues, *Michigan v. Bryant*, 562 U.S. 344, 381 (2011).

violence. *See* Rec. Doc. 425 at 20-22.[4] But those songs were not created for the purpose of use in court and are in no way analogous to affidavits, depositions, or prior testimony, nor were they created in custodial interrogation or any other conversation with law enforcement. The lyrics were not meant to create an "out-of-court substitute for trial testimony," *Polidore*, 690 F.3d at 711, but to intimidate the community, affirm the supremacy of the enterprise and its members (including Neville and Lewis), and, perhaps secondarily, to promote Price's music career. Because they are non-testimonial statements, neither Neville nor Lewis has a constitutional right to confront Price about them at trial, and *Bruton* poses no concern.[5]

C.  **Price's lyrics inculpating Neville and Lewis fall within two well-established exceptions to the hearsay rule, making those statements admissible as to each of those defendants.**

Price's statements are not only non-testimonial and thus outside the ambit of *Bruton*, but also fall within well recognized exceptions to the prohibition against hearsay, as the Court has already recognized in finding them admissible, subject, of course, to the government laying a proper predicate.

First, the lyrics in question are the statements of a co-conspirator made during and in furtherance of the RICO conspiracy to which Price, Neville, and Lewis all belonged. *See* Fed. R. Evid. 801(d)(2)(E). As explained *supra*, and as will be shown through testimony prior to the admission of the songs, they were written and performed at least in part to intimidate the community and affirm the supremacy of the enterprise. *See* Rec. Doc. 361 at 22; *see also United States v. Burton*, 126 F.3d 666, 675 (5th Cir. 1997) (providing a non-exhaustive list of the types

---

[4] Those lyrics include, from the song *Money Up*, "my nigga Poonie [Neville] baggin' O's until the scale break," and from the song *I Live This Sh\*t*, "my brother Eazy [Lewis] told me to do it for the team" and "see Lil Poonie [Neville], that's my shooter, he be on that site."

[5] As the Court is aware, the government routinely admits recordings from Title III interceptions in which one defendant is recorded implicating himself and other defendants. In a joint trial charging a conspiracy, the government is not required to redact the portion of the recording that implicates the other defendants. Nothing about the recording being part of a rap song or video changes that result.

4

of statements found to have been "in furtherance of" a conspiracy under 801(d)(2)(E), including statements that identify the role of one co-conspirator vis-à-vis another; statements conveying information intended to affect future dealings between the parties; puffing, boasts, and other conversation when used by the declarant to obtain the confidence of one involved in the conspiracy or of the person toward whom the statement is directed; and statements that explain events of importance to the conspiracy in order to facilitate its operation). And indeed, the specific references to Neville and Lewis were no mere extraneous shout-outs to Price's friends; they communicated to 39ers members, rival gang members, and the broader New Orleans community the retaliatory motive for committing a murder ("my brother Eazy [Lewis] told me to do it for the team and do it for Chedda Black every time a nigga squeeze"), and one conspirator's role in the racketeering enterprise ("my nigga Poonie [Neville] baggin' O's until the scale break" and "see Lil Poonie [Neville], that's my shooter, he be on that site"). The lyrics are admissible against co-conspirators Neville and Lewis just as they are admissible against each of the other members of the conspiracy because they are statements in furtherance of the conspiracy.

Second, the statements tend to expose Ashton Price to criminal liability and thus are statements against penal interest that are excluded from the hearsay bar under Rule 804(b)(3). Importantly, the Fifth Circuit has specifically held that statements against penal interest are admissible against not just the declarant, but against other parties inculpated by the statement as well. *See United States v. Surtain*, 519 F. App'x 266, 288-89 (5th Cir. 2013); *United States v. Ebron*, 683 F.3d 105, 132-34 (5th Cir. 2012). In *Ebron*, for example, two prisoners (Mosley and Ebron) were alleged to have murdered a fellow inmate. 683 F.3d at 120-21. A third prisoner (Bailey) testified at Ebron's trial that, while Mosley and Bailey were cellmates, Mosley admitted to him that he and Ebron had committed the murder. *Id*. at 132-33. On appeal, Ebron maintained

that although Mosely's admission qualified as a statement against penal interest under Rule 804(b)(3) as to Mosley, its admission against Ebron was improper. *Id*. at 133. The Fifth Circuit rejected Ebron's argument, concluding that "[u]nlike the situation where a declarant implicates himself and the defendant in a statement made to officials, a statement made outside a custodial context does not provide the same set of incentives that create the risk of an unreliable statement." *Id*. Just as in *Ebron*, here the statements implicating Lewis and Neville were made outside of a custodial setting with its attendant risk of unreliability.[6] Furthermore, Neville himself participated in the filming of the video, and even appears in the specific portions of the video where the lyrics mention him, giving credence to notion that he joined in the message being portrayed and thus found it generally reliable.[7]

---

[6] *See also* Fed. R. Evid. 804, Advisory Committee's Note to Exception (3) ("[*Douglas v. Alabama*, 380 U.S. 415 (1965), and *Bruton*)] by no means require that all statements implicating another person be excluded from the category of declarations against interest. Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same words spoken under different circumstances, *e.g*., to an acquaintance, would have no difficulty in qualifying.").

[7] Although the Court found that post-production editing made Neville's participation in filming the *Money Up* and *I Live This Sh\*t* videos too attenuated from the final product for him to be assumed to have "adopted" the statements that Price makes about him in those songs, his performance in the videos reveals that he indeed knew the songs and the lyrics that would be attributed to him. In fact, Neville lip-synchs throughout the *Money Up* video and makes a shooting gesture with his hand precisely as the overlaid music assigns him the role of "shooter" in the *I Live This Sh\*t* video. In *United States v. Hankton*, which the Court referenced in its order, defendant Walter Porter's appearance and hand gesture in a music video was sufficient for Judge Feldman to admit the overlaid lyric against him as an adoptive admission. Case No. 12-cr-00001, Rec Doc. 1486 at 10-12 (June 2, 2016) ("Not only does Porter voluntarily appear in the video, he points toward the camera and gestures to keep quiet as he is embraced by Dorsey."). The same logic applied here would result in a *third* channel by which to admit Price's lyrics inculpating Neville, namely as an adoptive admission.

**Conclusion**

For the foregoing reasons, the government respectfully urges the Court to reconsider its July 1, 2016 order and admit the four songs/videos without redaction.

Respectfully submitted,

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

*/s/ Myles D. Ranier*
MYLES D. RANIER
Assistant United States Attorney
Louisiana Bar Roll Number 30029
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3087
Email: myles.ranier@usdoj.gov

JEFFREY SANDMAN
Assistant United States Attorney
New York Bar Roll
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3055
Email: jeff.sandman@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Myles D. Ranier*